IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERESA DUNCAN,                          )
                                        )   2:11-cv-01536-GEB-CKD
                Plaintiff,              )
                                        )
        v.                              )   FINDINGS OF FACT AND
                                        )   CONCLUSIONS OF LAW; ORDER
THE HARTFORD LIFE AND ACCIDENT          )   REMANDING MATTER TO THE
INSURANCE COMPANY, a                    )   HARTFORD LIFE & ACCIDENT
corporation; LORILLARD TOBACCO          )   INSURANCE COMPANY
COMPANY,                                )
                                        )
                Defendants.             )
_____        )
                                        )
AND RELATED COUNTERCLAIM                )
_____        )

        A bench trial was scheduled to commence on February 6, 2013, in this Employment Retirement Income Security Act ("ERISA") action, which concerns the termination of Plaintiff's long term disability ("LTD") benefits. The parties agreed that no witnesses were to be called at trial "since this case is governed by ERISA." (Joint Pretrial Statement 6:18-23, ECF No. 73.)

        Upon reviewing the parties' trial briefs and the Administrative Record ("AR"), the Court determined that argument was unnecessary for decision on this matter. See Matter of Generes, 69 F.3d 821, 825 (7th Cir. 1995) (affirming bankruptcy court's decision to preclude closing argument in adversary proceeding, stating: "[Appellant] has supplied no authority for the proposition that closing arguments are a constitutional right in civil cases . . . nor have we been able to

find any"). Therefore, the Court vacated the bench trial by minute order on February 1, 2013. (ECF No. 114.) The February 1, 2013 minute order stated that a "formal order providing the [C]ourt's reasoning . . . w[ould] follow." (Id.)

Accordingly, the following findings of fact and conclusions of law are made under Federal Rule of Civil Procedure 52. For the reasons stated below, Defendant Lorillard Tobacco Company ("Lorillard") does not prevail on its affirmative defense that Plaintiff expressly released her ERISA claim against it. Further, the matter will be remanded to Defendant the Hartford Life and Accident Insurance Company ("Hartford") to complete its administrative review of Plaintiff's claim.

## I. FINDINGS OF FACT

### A.   Plaintiff's Long Term Disability Claim

1.    Effective January 1, 2005, CNA Group Life Assurance Company issued Lorillard group policy number 83099921 ("Policy"), providing LTD insurance benefits to eligible employees. (AR 1864-1902.)

2.    Pursuant to a policy endorsement, Hartford Life Group Insurance Company replaced the name CNA Group Life Assurance Company wherever it appears in the Policy. (AR 1888.)

3.    Hartford Life Group Insurance Company later merged into Hartford Life and Accident Insurance Company. At the time the benefit decision on Plaintiff's claim was reached, Hartford Life and Accident Insurance Company had assumed the rights and liabilities under the Policy. (Joint Pretrial Statement, Undisputed Fact B, 3:9-10.)

4.    In November 2005, Plaintiff, a former sales representative for Lorillard, submitted a claim for LTD benefits, claiming to be unable to work as of April 29, 2005, due to pain in her lower back, hips, legs, and feet. (AR 1586.)

5.   Hartford paid Plaintiff LTD benefits under the Policy from October 27, 2005, through July 28, 2010. (Joint Pretrial Statement, Undisputed Fact D, 3:13-14.)

6.   On July 28, 2010, Hartford notified Plaintiff that her LTD claim was terminated effective July 28, 2010. (AR 296-303.) The July 28, 2010 letter contains the following language:

> After review of the information gathered in the course of our investigation, we have determined that you no longer satisfy the definition of Disability as stated in the [P]olicy, and we have been prevented from having you examined as established in the [P]olicy. Therefore, your claim is hereby terminated effective 07/28/10 and is no longer payable.

(AR 296.)

7.   On August 4, 2010, Plaintiff's former counsel, Kantor & Kantor, LLP ("Kantor"), "advised [Hartford] that [Plaintiff] is requesting a review of Hartford's July 28, 2010 denial of her claim for ongoing benefits." (AR 291.)

8.   The August 4, 2010 correspondence contains the following language:

> [W]e request that Hartford not complete its review of her denial until we have been afforded the opportunity to receive and review the claim file in order to determine what additional documentation is needed to supplement the record. Please advise us of the last date which Hartford will accept additional materials prior to commencing its review of her claim. While we fully intend to supplement her record on appeal, if you have not received additional materials by such date, please proceed to complete your review.

(AR 291.)

9.   On September 10, 2010, Hartford sent Kantor a copy of Plaintiff's claim file. (AR 117.)

1   10. On December 9, 2010, Plaintiff requested a ninety day

2 extension for her appeal to "obtain an attorney." (AR 288.) Plaintiff

3 indicated in the December 9, 2010 correspondence that she was notified

4 by her former attorneys in November that "they would not be handling

5 [her] appeal process . . . ." (AR 288.)

6   11. On December 14, 2010, Hartford granted Plaintiff an

7 extension until April 4, 2011, to submit her "complete appeal." (AR

8 113.) The December 14, 2010 correspondence contains the following

9 language:

> [Y]our complete appeal must be filed with The
> Hartford by April 4, 2011 in order to be considered
> timely. Any appeal received beyond April 4, 2011
> will not be considered timely and will not be
> reviewed.
>
> . . . . At this time your file remains closed and
> any appeal that you intend to file must be received
> by the Hartford by April 4, 2011.

15 (AR 113.)

16   12. On February 8, 2011, one of Plaintiff's current

17 attorneys, Charles J. Fleishman ("Fleishman") sent Hartford a letter,

18 indicating that he was "retained by [Plaintiff] with regard to her claim

19 for disability benefits from The Hartford." (AR 285-286.)

20   13. The February 8, 2011 letter contains the following

21 language:

> [Plaintiff] appeals the denial of disability
> benefits. In order to present a meaningful appeal
> and to help you fulfill your obligation to give her
> a "full and fair" review, please send me the
> following:
>
> 1. All medical records, reports, treatises,
> etc, regardless of the author, that were submitted
> to The Hartford for consideration with regard to
> this claim.
>
> 2. All other reports offered to you for
> consideration regarding this claim including, but

4

1    not limited to, vocational rehabilitation reports
     and FCE's.
2
          3.   All information supplied to you by the
3    claimant's former employer.

4          4.   Copies of all correspondence between The
     Hartford and the claimant, the claimant's doctors,
5    the claimant's employer, and your consultants
     regarding the present claim.
6
          5.   A copy of the plan, insurance policy, and
7    SPD.

8          . . . .

9          9.   All items, not otherwise covered above,
     that you think justify The Hartford's decision to
10   deny benefits in this case.

11         I need the above information before I can
     respond meaningfully to the denial of benefits. If
12   there are any tests that you feel would be
     important to the proving of the claim, please
13   inform me of them and the reason that you think
     they are important. Finally, should you obtain
14   another doctor's opinion that you will be inclined
     to rely on to support a denial of benefits, before
15   you make that final decision, I would like to
     review the opinion and have an opportunity to
16   comment on it.

17   (AR 285-286.)

18         14.   On March 4, 2011, Hartford declined to send Fleishman a

19   copy of Plaintiff's claim file, stating in part:

20         On September 10, 2011 we forwarded a copy of
     [Plaintiff's] entire claim file to her previous
21   counsel . . . .

22         Since we already reproduced and provided a
     copy of her entire file in response to the previous
23   request, and we have been informed by [Plaintiff]
     she is no longer represented by the previous firm;
24   by providing a copy of this letter to [Plaintiff]
     and to [Kantor], we are asking them that the
25   already provided materials are forwarded to you.

26   (AR 109.)

27

28

5

15.  On March 11, 2011, Fleishman responded to the Hartford's March 4, 2011 letter, stating in part:

> My problem is that even if the administrative record was sent to [Plaintiff's] prior attorney and then given to her, I have a record with a lot of material in it and I don't know if all of the material is a part of the record that The Hartford has or material that has been gathered by [Plaintiff] or her prior attorney in addition to the material that The Hartford has. Furthermore, most of what I have is from December 2007 and before. There is nothing that post dates December 2007 that seems to be from The Hartford except your letter to [Plaintiff] terminating the claim on the 28th of some month in 2010 and your letter to me.
>
> . . . . In short, the file that was given to me does not contain anything from your claim file dated after December 2007.
>
> Please send me a copy of everything in your file that is dated after December 2007. I am more than willing to pay you for any cost of reproduction and postage. I cannot represent [Plaintiff] properly without the requested material and The Hartford cannot honestly exercise its fiduciary duty to grant her a full and fair review unless I have the material. . . .

(AR 283-284.)

16.  On March 31, 2011, Fleishman again requested a copy of Plaintiff's claim file and provided Hartford with additional medical information regarding Plaintiff from Dr. Mathias Masem. (AR 105.)

17.  Hartford sent a copy of Plaintiff's "entire claim file" to Fleishman on April 4, 2011. (AR 107.)

18.  On May 4, 2011, Fleishman sent additional materials to Hartford for their consideration in connection with Plaintiff's appeal. The May 4, 2011 correspondence contains the following language:

> Thank you for sending me the claims file in the above matter. I have had little time to review it in full but I think I should send you the material that I have so that The Hartford can begin to evaluate it. If, after you have evaluated all of the enclosed material, you still have questions or

need additional information, please let me know.
Also, before you reach a final decision, I would
like the opportunity to review any reports that
evaluate the evidence so that I, my client, and my
client's doctors can comment, clarify or correct
any mistakes or misunderstandings in those reports.

Enclosed you will find:

1. A statement by [Plaintiff] and statements
from 7 people who know her regarding her condition.

2. Discharge instructions from NorthBay
Healthcare dated 2/14/11.

3. A FCE of 12/14/10 showing that
[Plaintiff] cannot perform a sedentary job. Please
note that the FCE did not even consider her carpal
tunnel problems.

4. Report of MRI testing on May 6, 2010.

5. 7 reports from Advanced Physical
Medicine & Rehabilitation Group dated 3/25/10,
4/22/10, 5/25/10, 6/24/10, 8/3/10, 12/8/10, and
1/24/11.

6. A letter to Hartford from Dr. Cake dated
12/23/10.

7. EMG report from testing done on 2/7/11.

8. Reports from Dr. Masem dated 9/7/10,
10/7/10, 10/25/10, 1/7/11, 1/28/11, and 3/7/11.

9. 2 reports from UCSF dated 12/17/07 and
10/16/07.

10. 2 articles from the internet defining
anterolisthesis and retrolisthesis.

(Duncan AR 2000-2011, Plaintiff's Trial Ex. 1, ECF No. 78-1.)

19. On May 26, 2011, Hartford sent Fleishman correspondence

indicating that it is "unable to consider [Plaintiff's] appeal." (AR

105-106.) The May 26, 2011 letter states in part:

[Plaintiff's] complete appeal was received in
our office on 5/9/2011, according to your letter
from 5/4/2011, along with additional medical
information for appeal consideration.

> Therefore, the information indicates that [Plaintiff's] complete appeal was not received in our office by the due date of 4/4/2011, as indicated by The Hartford's letter from 12/14/2010, and cannot be considered.
>
> At this time, the claim file remains closed and no further review will be conducted.

(AR 105-106.)

20. Concerning the "Claims Denial Process," the Policy states in relevant part as follows:

> You . . . or a duly authorized representative may appeal any denial of a claim for benefits by filing a written request for a full and fair review to the insurance company. In connection with such a request, documents pertinent to the administration of the Plan may be reviewed, and comments and issues outlining the basis of the appeal may be submitted in writing. You may have representation throughout the review procedure. A request for a review must be filed by 180 days after receipt of the written notice of denial of a claim. The full and fair review will be held and a decision rendered by the insurance company no longer than 45 days after receipt of the request for the review.
>
> . . . . The decision after Your review will be in writing and will include specific reasons for the decision as well as specific references to the pertinent Plan provisions on which the decision is based.

(AR 1891.)

**B. Plaintiff's Workers' Compensation Claim**

21. On December 20, 2005, Plaintiff filed a workers' compensation claim against Lorillard, claiming a repetitive stress injury to her lower back, hips, and legs. (AR 1053.)

22. On June 23, 2008, Plaintiff executed a form "Workers' Compensation Appeals Board Compromise and Release" ("Compromise and Release") in favor of Lorillard and its workers' compensation insurer, Liberty Mutual Group. (AR 325-328.)

23.   The   Compromise   and   Release   contains   the   following language:

> Upon approval of this compromise agreement by the Workers' Compensation Appeals Board or a workers' compensation administrative law judge and payment in accordance with the provisions hereof, the employee releases and forever discharges the above-named employer(s) and insurance carrier(s) from all claims and causes of action, whether now known or ascertained or which may hereafter arise or develop as a result of the above-referenced injury(ies), including any and all liability of the employer(s) and the insurance carrier(s) and each of them . . . . Execution of this form has no effect on claims that are not within the scope of the workers' compensation law or claims that are not subject to the exclusivity provisions of the workers' compensation law, unless otherwise expressly stated.
>
> . . .
>
> WARNING TO EMPLOYEE: SETTLEMENT OF YOUR WORKERS COMPENSATION CLAIM BY COMPROMISE AND RELEASE MAY AFFECT OTHER BENEFITS YOU ARE RECEIVING OR MAY BECOME ENTITLED TO RECEIVE IN THE FUTURE FROM SOURCES OTHER THAN WORKERS' COMPENSATION, INCLUDING BUT NOT LIMITED TO SOCIAL SECURITY, MEDICARE AND LONG-TERM DISABILITY BENEFITS.

(AR 325, 328.)

24.   In addition to the Compromise and Release, Plaintiff signed an "Informed Consent to Compromise and Release," on June 23, 2008, which contains the following language:

> I understand and acknowledge that the settlement of my workers' compensation case by Compromise and Release with the defendants, which are the insurance company and the employer, means that the insurance company and the employer will not be responsible for any future medical expenses and permanent disability payments after the date of signing the Compromise and Release.
>
> . . .
>
> I am taking full responsibility for all of my future medical treatment and the costs thereof. No further treatment will be supplied by defendants and no further expenses will be paid by defendants.

9

1        . . .

2           I understand that I will not be able to go back to
the defendant for additional treatment or

3           disability payments even if unforseen serious
medical complications arise or future medical

4           expenses far exceed the settlement amount. My
medical condition could worsen and require

5           substantial increase in medical expenses, which
will be entirely my responsibility.

6

7   (AR 326.)

8                   **II. CONCLUSIONS OF LAW**

9      **A.**   **Lorillard's Affirmative Defense**[1]

10          Lorillard argues in its trial brief that Plaintiff's claims

11  against it fail for the independent reason that "the preponderance of

12  the evidence in the administrative record demonstrates that Plaintiff

13  has released her claims against Lorillard in exchange for a payment of

14  $120,000." (Lorillard's Trial Brief 2:1-2 n.3, ECF No. 92.) Lorillard

15  contends that the Compromise and Release "expressly contemplated the

16  present LTD claims and released them." (Id. at 10:5-6.) Lorillard

17  further argues: "[e]ven if Plaintiff had not specifically released 'any

18  future medical expenses and permanent disability payments after the date

19  of signing,' . . . Plaintiff's release . . . 'of all claims and causes

20  of action' must be interpreted as comprehensive and inclusive of the

21  present action." (Id. at 15:3-6.)

22          Plaintiff responds in her opposition to Lorillard's trial

23  brief, in part, as follows:

24           Lorillard makes the same arguments it did in its
earlier Summary Judgment motion, does not provide

25

---

26      [1] Lorillard objects on various grounds to the admission of
certain evidence Plaintiff cites in her trial brief. (Lorillard's

27  Objections to Pl.'s Proposed Evidence, ECF No. 103.) Decision on these
objections is not reached since the Court did not consider the evidence

28  objected to in deciding Lorillard's affirmative defense.

1          any new evidence or authority in support of those
        arguments[,] and expects this court to reach the
2          opposite conclusion as it did previously. . . . If
        Lorillard wants to show that the workers'
3          compensation [Compromise and Release Plaintiff]
        signed applies to her ERISA claims, Lorillard bears
4          the burden of showing that [those] claims are
        subject to the exclusivity provisions of the
5          workers' compensation law or are expressly
        released.

6

7  (Pl.'s Opp'n to Lorillard's Trial Brief 1:25-2:1, 2:23-3:2, ECF No. 100

8  (emphasis omitted).) Plaintiff further argues that "[a]n ERISA claim

9  cannot be within the scope of California's workers' compensation law[

10  as] it is governed by a federal statute with superseding authority[,]"

11  and "[t]he [Informed Consent to Compromise and Release] did not

12  expressly address [Plaintiff's] ERISA benefits." (Id. at 3:14-16, 5:10-

13  14.)

14          "[F]ederal law always governs the validity of releases of

15  federal causes of action." Petro-Ventures, Inc. v. Takessian, 967 F.2d

16  1337, 1340 (9th Cir. 1992) (internal quotation marks omitted). However,

17  "[f]requently, state rules of decision will furnish an appropriate and

18  convenient measure of the governing federal law." Mardan Corp. v. C.G.C.

19  Music, Ltd., 804 F.2d 1454, 1458 (9th Cir. 1986). For example, the Ninth

20  Circuit applied California law in an ERISA action in reviewing a

21  district court's decision that "the parties reached a valid accord and

22  satisfaction of a bona fide dispute. . . . ." Bldg. Serv. Emp. Pension

23  Trust v. Am. Bldg. Maint. Co., 828 F.2d 576, 577-78 (9th Cir. 1987).

24  Lorillard and Plaintiff both "rely on California law for the relevant

25  contract principals here, and [the Court] accept[s] it as controlling"

26  in determining whether Plaintiff released her ERISA claim against

27  Lorillard when it signed the Compromise and Release. Id.

28

1    "Under California law, a release is the abandonment,
2    relinquishment or giving up of a right or claim to the person against
3    whom it might have been demanded or enforced, and its effect is to
4    extinguish the cause of action." Operating Eng'rs Pension Trust v.
5    Clark's Welding & Mach., 688 F. Supp. 2d 902, 910 (N.D. Cal. 2010). "In
6    general, a written release extinguishes any obligation covered by the
7    release's terms, provided it has not been obtained by fraud, deception,
8    misrepresentation, duress, or undue influence." Skrbina v. Fleming Cos.,
9    45 Cal. App. 4th 1353, 1366 (1996). However, "the standard language of
10   the preprinted [Workers' Compensation Appeals Board Compromise and
11   Release form] used in settling workers' compensation claims releases
12   only those claims that are within the scope of the workers' compensation
13   system, and does not apply to claims asserted in a separate civil
14   actions." Claxton v. Waters, 34 Cal. 4th 376 (2004). As stated by the
15   California Supreme Court in Claxton v. Waters:

16           [E]xecution of the mandatory standard preprinted
              compromise and release form would only establish
17           settlement of the workers' compensation claims; the
              intended settlement of claims outside the workers'
18           compensation system would have to be reflected in a
              separate document. . . . [I]t would be sufficient
19           to refer generally to causes of action outside the
              workers' compensation law in clear and
20           non-technical language.

21   Id. at 378 (internal citations and quotation marks omitted).

22           Lorillard has the burden of proving its affirmative defense
23   that the Compromise and Release "preclude[s] liability" for Plaintiff's
24   ERISA claim against it. Miles v. Amer. Seafoods Co., 197 F.3d 1032, 1034
25   (9th Cir. 1999); see also Williams v. Phillips Petroleum Co., 23 F.3d
26   930, 935 (5th Cir. 1994) ("Once a party establishes that his opponent
27   signed a release that addresses the claims at issue, received adequate
28   consideration, and breached the release, the opponent has the burden of

demonstrating that the release was invalid because of fraud, duress,
material mistake, or some other defense.")

Plaintiff's Compromise and Release specifically states:
"Execution of this form has no effect on claims that are not within the
scope of the workers' compensation law or claims that are not subject to
the exclusivity provisions of the workers' compensation law, unless
otherwise expressly stated." (AR 325.) Further, the separately signed
"Informed Consent to Compromise and Release" neither references ERISA or
the receipt of LTD benefits, nor contains language otherwise indicating
that the settlement was meant to encompass claims outside of the
workers' compensation system. Therefore, Lorillard has not shown by a
preponderance of the evidence that the Compromise and Release precludes
liability on Plaintiff's ERISA claim. Compare Romberio v. Unum Life Ins.
Co. of Am., 761 F. Supp. 2d 862, 868-71 (N.D. Cal. 2010) (denying
defendants' summary judgment motion in ERISA action based upon
affirmative defense of release where "[t]he release does not mention the
ERISA plan by name[, n]or does it mention ERISA by name" and the release
does not "exclude any claims or benefits from the release, which would
have indicated to plaintiff that all non-excluded claims or benefits
were in fact included in the release"), with Piehl v. Metro. Life Ins.
Co., No. Civ. 03-669-MO, 2005 WL 627586, at *2-3 (D. Or. Mar. 16, 2005)
(stating "plaintiff executed a valid release of his ERISA claims" where
"certain employee benefits were excluded from the release while others,
including ERISA benefits, were explicitly released"), and Parisi v.
Kaiser Found. Health Plan Long Term Disability Plan, No. C 06-04359 JSW,
2008 WL 220101, at *2-3 (N.D. Cal. Jan. 25, 2008) (granting summary
judgment in ERISA action on defendant's affirmative defense of waiver

where "Plaintiff expressly released claims arising under ERISA, as well as claims for insurance and benefits").

## B.   Standard of Review / Remand to Plan Administrator

The parties dispute what standard of review governs the Court's review of Hartford's termination of Plaintiff's LTD benefits. Hartford and Lorillard both argue that the deferential "abuse of discretion" standard applies; whereas Plaintiff contends the Court's review is *de novo*.

In essence, Hartford and Lorillard argue that the Policy grants Hartford sole discretionary authority to determine eligibility for benefits under the Policy and to interpret the terms and provisions of the Policy. (Hartford's Trial Brief 16:9-14, ECF No. 80; Lorillard's Trial Brief 8:18-9:2.) Defendants further argue: "[w]here such authority is given, . . . a 'deferential standard of review' is appropriate." (Lorillard's Trial Brief 8:7-10, 8:18-9:3; see also Hartford's Trial Brief 16:2-8, 16:16-23.)

Plaintiff argues concerning the standard of review as follows:

[B]ecause Hartford failed to decide [Plaintiff's] appeal the appropriate standard of review in this case is *de novo* regardless of whether the plan grants discretion to Hartford. Hartford refused to consider [Plaintiff's] appeal and so failed to exercise its discretion to decide the appeal. A *de novo* standard of review applies.

(Pl's Trial Brief 17:20-17:3 (internal citations omitted), ECF No. 78.)

Hartford replies to Plaintiff's position, arguing:

There is no procedural irregularity because Plaintiff failed to abide by the time extension provided by Hartford to submit her complete appeal. Hartford's December 14, 2010 letter responding to Plaintiff's request for an extension of time specifically advised her that her "complete appeal must be filed with The Hartford by April 4, 2011 in order to be considered timely." [Plaintiff] did not submit her complete appeal until May 4, 2011. [Plaintiff] concedes that her appeal was not

1        complete by April 4, 2011. Indeed, her attorney's
         February 8, 2011 letter requests certain
2        documentation before he could "meaningfully respond
         to the denial of benefits." The letter advises that
3        she would be submitting additional materials.

4   (Hartford's Reply to Pl.'s Opp'n to its Trial Brief 2:7-16, ECF No.

5   111.) Hartford further replies: "[e]ven assuming Hartford committed a

6   procedural violation by not considering Plaintiff's appeal, the proper

7   remedy for this non-flagrant procedural irregularity would be to <u>remand</u>

8   the claim to Hartford to adjudicate her appeal." (<u>Id.</u> at 4 n.4.)

9        The Court does not decide the issue of what standard of review

10  governs its review of Hartford's decision to terminate Plaintiff's LTD

11  benefits since it finds that Fleishman's February 8, 2011, "letter

12  should have been treated as an appeal [of Hartford's decision to

13  terminate her LTD benefits] once the appeal period expired." <u>Eppler v.</u>

14  <u>Hartford Life & Acc. Ins. Co.</u>, No. C 07-04696 WHA, 2008 WL 361137, at

15  *10 (N.D. Cal. Feb. 11, 2008). "Under the [Policy], Hartford owed

16  [P]laintiff the duty to make a second, independent review, even if it

17  were based on the same record with no new submissions." <u>Id.</u>

18       It is true that the [February 8, 2011] letter
         implied that a more formal appeal would be
19       forthcoming. When it did not arrive, the question
         is whether to conclude an appeal was intended at
20       all or to conclude that the claimant wished to
         appeal but had no new documents. In light of the
21       solicitude under ERISA for claimants, Hartford
         should have gone ahead and given a second,
22       independent look into the matter, treating it as an
         appeal without further submission subject to the <u>de</u>
23       <u>novo</u> review.

24  <u>Id.</u> at *11; <u>see also</u> <u>Kellogg v. Metro. Life Ins. Co.</u>, 549 F.3d 818, 826-

25  27 (10th Cir. 2008) (stating that "MetLife clearly had a responsibility

26  under ERISA to . . . issue a decision on [Plaintiff's] appeal" when the

27  Plaintiff's counsel stated in a letter that Plaintiff "[is] appealing

28  the decision to deny payment of benefits" even though the same letter

requested a copy of Plaintiff's claim file and requested time following

receipt of the claim file to "present additional information").

Accordingly, "[t]his matter is hereby remanded to Hartford to conduct its administrative review of [P]laintiff's [appeal]." Eppler, 2008 WL 361337, at *11; see also Hardt v. Reliance Std. Life Ins., 540 F. Supp. 2d 656, (E.D. Va. 2008) (denying cross-motions for summary judgment in ERISA action and remanding matter to ERISA plan administrator, stating: "[t]his case presents one of those scenarios where the plan administrator has failed to comply with the ERISA guidelines and the proper course of action is to remand to the plan administrator for a full and fair review" (internal quotation marks omitted)). Further, in conducting its administrative review, Hartford shall consider the additional medical information regarding Plaintiff from Dr. Masem that Plaintiff provided to Hartford by letter dated May 31, 2011, and Plaintiff's correspondence to Hartford, with enclosures, dated May 4, 2011. See Eppler, 2008 WL 361137, at *11.

This case shall be closed.

Dated: February 7, 2013

GARLAND E. BURRELL, JR.
Senior United States District Judge